IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-240-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| MICHAEL GLOVER | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 655).  Seeking compassionate release, the defendant contends that his medical conditions, along with the threat of the ongoing COVID-19 pandemic, constitute an extraordinary and compelling reason for consideration of his immediate release.  He also raises several legal challenges to his sentence.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release, and that the defendant's arguments regarding his sentence are without merit.  Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.  The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the

2

factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*,

3

836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### Exhaustion of Administrative Remedies

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

4

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant appears to have exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

I. *The Defendant's Medical Conditions*

In his motion (ECF No. 655), the defendant seeks compassionate release on the grounds that he suffers from the following medical ailments: COPD,[2] high blood pressure, high cholesterol, an enlarged heart, obesity, and arthritis. He contends that sleeping with a CPAP[3] machine puts him at an increased risk from COVID-19. He reports that he contracted COVID-19 and has recovered. He has also received two does of the Pfizer COVID-19 vaccine.

The defendant's Presentence Report (PSR) (ECF No. 480) prepared in October 2018 reveals that the defendant suffered from the first five ailments listed above at the time of his sentencing. The government does not seriously contest that the defendant suffers from the medical problems listed above.

It appears to this court that the defendant's medical conditions, especially the COPD diagnosis, demonstrate an extraordinary and compelling reason for consideration of his immediate release based on his medical conditions.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with particular review of the defendant's post-sentencing conduct while incarcerated.

---

[2] Chronic Obstructive Pulmonary Disease (COPD) is a condition involving constriction of the airways and difficultly or discomfort in breathing.

[3] Continuous Positive Airway Pressure (CPAP) is a machine that uses mild air pressure to keep breathing airways open.

The court will address the § 3553(a) factors in turn:

1.  *Nature and Circumstances of the Offense.*     The defendant was one of 10 individuals named in a 5-count Superseding Indictment filed in the District of South Carolina on October 21, 2014.  The defendant was named in the following Counts:

> Count 1:     Lesser included offense of conspiracy to possess with intent to distribute and to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851; and

> Count 2:     Conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h).

The government filed an Information (ECF No. 425) pursuant to 18 U.S.C. § 851 notifying the defendant that he was subject to increased penalties based on two prior convictions.[4]

The defendant pleaded guilty, pursuant to a written plea agreement (ECF No. 431), to Counts 1 (lesser included offense) and 2 above.

The evidence developed in the investigation reveals that the defendant conspired with several individuals to acquire and distribute multi-gram and multi-ounce quantities of heroin throughout the Columbia, South Carolina area.  Some of the controlled substances were imported from North Carolina and others were mailed here from various cities around the

---

[4]   (1) Possession with intent to sell and deliver marijuana: Guilford County (High Point), North Carolina; Superior Court; Indictment # 93CR008756; date of guilty plea and sentencing December 2, 1993; sentenced to 9 years and 5 years probation, special conditions of intensive probation, community service, and $585 fine; and (2) Possession with intent to sell and deliver cocaine, sale or deliver cocaine and conspiracy to sell and deliver cocaine; Guilford County (High Point), North Carolina; Superior Court; Indictment #s 94CR006020, 94CR006021; date of guilty plea and sentencing August 30, 1994; sentenced to 8 years, special condition of 5 days jail credit, run concurrent with sentence serving; consolidate with count 1 for judgment on 94CR006020 and consolidate 941CR006021 with 94CR006021 for judgment.

globe.

The defendant also engaged in illegal activities with other co-conspirators by using the drug proceeds to purchase larger quantities of heroin, to rent vehicles for the purpose of transporting heroin, and to purchase airline tickets for travel to New York from Columbia to purchase heroin.

The defendant remained a fugitive after the Indictment and was later arrested on June 27, 2017 after federal investigators utilized a digital imaging program to track him to a residence in San Antonio, Texas, where he was living under an alias.

At sentencing, the defendant received enhancements for possessing a weapon in connection with a crime of violence, maintaining a stash house, being an organizer or leader of a criminal activity, and obstructing justice. He was held accountable for 793.5 grams of heroin.

The PSR calculated the defendant's total offense level at 34, with a criminal history category of IV. This yielded a Guideline sentence of life. At the sentencing hearing on October 16, 2018, the defendant withdrew all of his objections to the PSR except for his loss of the 3-level reduction for acceptance of responsibility.

On October 16, 2018, this court sentenced the defendant to a term of imprisonment of 324 months, consisting of 324 months as to Counts 1 and 2 to run concurrently.

The defendant filed a direct appeal of conviction and sentence. The Fourth Circuit Court of Appeals dismissed the appeal based upon the appeal waiver contained in the plea agreement. In March 2020, the defendant filed a motion pursuant to 28 U.S.C. § 2255

(ECF No. 558) wherein he challenged his career offender designation and alleged claims of ineffective assistance of counsel. This court denied the motion on the merits (ECF No. 595).

The defendant has served approximately 60 months of his 324-month sentence and is currently scheduled to be released in June 2040. He is housed at FCI Beckley.

2. *History and Characteristics of the Defendant*. The defendant is now 51 years old. He was born and raised in Brooklyn, New York. He was one of 8 children. The defendant has one child from a previous relationship and has one step-child from the marriage to his current wife.

The defendant began smoking marijuana at age 15 and regularly smoked marijuana until his diagnosis of COPD in 2017. He began abusing cocaine at the age of 18 and he used cocaine on a regular basis until approximately 2010 when he began using heroin.

The defendant completed the 10th grade of high school. It does not appear that he has sought any further educational opportunities to obtain his GED. Prior to his arrest, the defendant ran a janitorial business.

The defendant has a extensive history of state convictions as noted below:

• possession of marijuana up to ½ ounce (June 1992 arrest/August 1992 conviction in NC);

• resisting/obstructing public officer (September 1992 arrest/October 1992 conviction in NC);

• resisting/obstructing public officer/disorderly conduct/2nd degree trespass (October 1992 arrest/February 1993 conviction in NC);

• possession with intent to sell and deliver marijuana/possession with intent to sell and deliver cocaine/sell or deliver cocaine (July 1993 arrest/December 1993 conviction in NC);

• 2nd degree trespass/resisting/obstructing public officer (November 1993 arrest/April 1994 conviction in NC);

• possession with intent to sell and deliver cocaine, sell or deliver cocaine/conspiracy to sell and deliver cocaine (February 1994 arrest/August 1994 conviction in NC);

• fraudulent check more than $500, but less than $1,000 (August 2006 arrest/September 2006 conviction in SC);

• public disorderly conduct (October 2007 arrest/November 2007 conviction in SC);

• fraudulent check under $500 (3 counts)(August 2008 arrest/July 2009 conviction in SC); and

• possession of other controlled substances in Schedule I to V 1st offense (September 2010 arrest/August 2011 conviction in SC).

*Post Sentencing Conduct*

While incarcerated, the defendant has had one disciplinary violation on his record for failing to attend a stand count.  While incarcerated, he has taken a total of 31 educational and vocational course including subjects such as anger management, family parenting, leisure fitness, all of which seem to have substantial rehabilitative value.  As noted previously, it does not appear from the records submitted by the government that the defendant has attempted to obtain his GED while incarcerated.

The defendant states that if released, he would reside with his wife in Greensboro, North Carolina.

10

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory factors.

II. *The Defendant's Challenge to his Sentence*

The court will now address the legal arguments advanced by the defendant in his current motion for compassionate release. The defendant contends that if sentenced today, his sentence would be vastly different from the sentence imposed because of intervening

changes in the law. He contends that he would no longer be considered a career offender and that the predicate offenses for the § 851 enhancement would no longer qualify as a predicate offenses after the passage of the First Step Act. He asks the court to remove his career offender designation, remove the § 851 Information, and recalculate his Guidelines.

It should be noted from the outset that this court has previously denied the defendant's § 2255 motion. Included as one of the arguments in that motion was that he no longer qualified as a career offender. As the court pointed out in its order denying the § 2255 motion (ECF No. 595), the defendant's sentence was not driven by his career offender status. Rather, it was driven by his Guideline range, which depended in large part upon the quantity of controlled substances he was held accountable for, coupled with several enhancements to his offense level. The career offender argument has thus been previously dismissed by this court and it will decline to revisit the issue at the present time even in light of the First Step Act.

The defendant's arguments regarding the § 851 enhancement also miss the mark. Even if some of his predicate offenses would no longer qualify, the fact remains that the defendant was not sentenced to a mandatory minimum sentence based upon the § 851 enhancements. For the heroin count, the defendant's base offense was 32. Enhancements were added for possession of a dangerous weapon, maintaining a stash house, being an organizer or leader, and obstructing justice. This resulted in an adjusted offense level increase from 32 to 42. On the money laundering count, the defendant's base offense level was 36. This level was enhanced by 2 points for the special offense characteristics set out

12

in 18 U.S.C. § 1956, and by 4 points for his role in the offense, and by 2 additional points for obstruction of justice. This resulted in an adjusted offense level increase from 36 to 44. However, the Guidelines provide that when an offense level is in excess of 43, the offense level will be treated as 43. Thus, the defendant was sentenced based upon the Guidelines, not based on any statutory mandatory minimum sentence.

Moreover, it should be observed that this court afforded the defendant a benefit by giving him a 3-level reduction for acceptance of responsibility in spite of the fact that he had obstructed justice. The court also issued a 36-month downward variance from the low end of the Guidelines.

For all the foregoing reasons, the legal arguments regarding the defendant's sentence lack merit.

### III.   *Request for Home Confinement*

Alternatively, the defendant seeks to have this court direct the BOP to place the defendant in home confinement, however, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18  U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g).  The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this.  See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the

first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

## IV. *Request for Appointment of Counsel and a Hearing*

The defendant has moved a second time for appointment of counsel (ECF No. 677) and has also moved for a hearing on his motion for compassionate release (ECF No. 678). There is no general constitutional right to appointed counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). The court has discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *see also United States v. Reed*, 482 F. App'x 785, 786 (4th Cir. 2012); cf. 18 U.S.C. § 3006A (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings). The defendant has not otherwise established that the interests of justice require appointment of counsel in these circumstances, nor would his appearance aid this court in a hearing. These motions are respectfully denied.

## CONCLUSION

As noted earlier in this order, the court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release relating to his medical conditions (some of which existed at the time of the crimes for which he is now incarcerated). Even so, the defendant's release at this time is not appropriate in light of this court's investigation of the record and individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein. This court's review of

14

these factors points to the strong conclusion that the defendant's release at this time is not appropriate.

The defendant pleaded guilty to two major crimes; additionally, he received enhancements for possession of a weapon in connection with another crime, being an organizer or leader of the criminal activity, maintaining a premise for the manufacture and distribution of drugs, and obstructing justice. At sentencing, this court exercised leniency and allowed the defendant a reduction for acceptance of responsibility in spite of his obstruction of justice. The court also issued a downward variance below the low end of the sentencing Guidelines. Moreover, the defendant has served only a small percentage of his original 324-month sentence which commenced in 2018.

For the foregoing reasons, the motion (ECF No. 655) is respectfully denied.

IT IS SO ORDERED.

May 27, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

15