IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-240-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| MICHAEL GLOVER | ) | |
| _____ | ) | |

This matter is before the court on the defendant's third *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 907).  Seeking compassionate release, the defendant contends that his terminal medical condition constitutes an extraordinary and compelling reason for consideration of his immediate release.

The government has responded in opposition, arguing that while it does not contest the defendant has shown an extraordinary and compelling reason for release, the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.  The defendant replied thereto.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motion is granted.

## STANDARD OF REVIEW

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as

1

amended by the First Step Act, Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018). To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195. The defendant bears the burden to establish that he or she is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024). Relevant here, an amended Sentencing Guidelines policy statement went into effect in November 2023 and provides criteria for determining the existence of extraordinary and compelling reasons for release. Generally, the list of circumstances qualifying as extraordinary and compelling falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions. U.S.S.G. § 1B1.13(b).

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the Bureau of Prisons (BOP) bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government does not dispute the defendant's exhaustion of his administrative remedies. Thus, the court will proceed to review the matters on the merits.

## DISCUSSION

The Sentencing Commission issued a policy statement, amended in November 2023, that governs reduction of sentences under § 3582(c)(1)(A). The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(A). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(B). Third, extraordinary and compelling reasons exist when the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(C).

## I.  *The Defendant's Medical Conditions*

In his motion (ECF No. 907), the defendant seeks compassionate release on the grounds that he has been given a poor end-of-life expectancy prognosis of 18 months or less. He avers that his health is rapidly deteriorating and that his BOP care level has increased to the highest level—Level 4—which requires 24-hour medical care.

The defendant states that since this court denied his last motion for compassionate release, he has developed additional health issues[1] which are very severe and include: anemia, oxygen dependency 24 hours per day, mobility with electrical wheelchair, confined to a bed or wheelchair 75% of the day, history of cavity abscess of the lungs, possible lung transplant, gout, sleep apnea, scarring of the lungs, emphysema, iron deficiency, pulmonary fibrosis/hypertension, end stage lung disease, gallstones, lung function at 50% capacity, and end stage Sarcoidosis.

---

[1]  The defendant asserts that most of his life endangering medical conditions are a direct result of the BOP shortfalls and their inability to provide the prompt medical attention that he requires.  The defendant provides no proof of this allegation and such claim is not properly before the court under a § 3582 motion.

The defendant acknowledges that while some of his medical ailments did exist prior to sentencing, those ailments have significantly worsened since his imprisonment.[2]

The defendant also contends that as a result of his severely compromised medical conditions, he faces a much greater risk of harm in the prison's communal environment from infectious diseases such as COVID-19, influenza, or the common cold. He states that he lives in daily fear of becoming sick due to transmission between inmates and any minor infection could end his life.

Finally, the defendant notes that he has now become eligible for a lung transplant which would be his only avenue for a feasible cure at this point in time. However, he also states that his additional ailments make him a poor candidate for a lung transplant and that he would have to lose 100 pounds to be considered a candidate.

The government is not contesting that the defendant has serious medical conditions that appear to meet the definition of a terminal illness under § 1B1.13(b)(1)(A). As the government notes in its opposition brief (ECF No. 917), the BOP Medical Director noted in an October 7, 2025 memo that the defendant has "an extensive medical history that includes obesity, hyperlipidemia, sleep apnea requiring a CPAP at night, continuance oxygen dependence of 4L, moderate to severe pulmonary hypertension, chronic hypoxic respiratory failure, and interstitial pulmonary fibrosis. The Medical Director indicated that the defendant

---

[2] In his previous motion for compassionate release, the defendant asserted that he had the following serious medical conditions: Chronic Obstructive Pulmonary Disease (COPD), high blood pressure, high cholesterol, an enlarged heart, obesity, and arthritis.

is currently using a wheelchair, but remains independent with his daily activities.

The government also notes the BOP outline treatment providers have stated that "given [defendant's] severe restriction on pulmonary function studies, respiratory failure, moderate pulmonary HTN on right heart catheterization and no clear pharmacological options that might reverse his fibrotic pulmonary conditions, his prognosis is poor with a life expectancy that is likely to be less than 18 months." (ECF No. 918-6, Exh. G, p. 2). The BOP states that while based upon their review of defendant's medical records, "it is difficult to determine [defendant's] life expectancy with a degree of certainty…. [Defendant] does meet the terminal Reduction in Sentence (RIS) criteria based on an end-of-life trajectory as described in the First Step Act given his advanced diagnosis with no clear treatment options to reverse his condition, progressive illness and other comorbid medical conditions." *Id*.

It its order of June 14, 2022 (ECF No. 714) regarding the defendant's previous motion for compassionate release, this court found that the defendant had demonstrated extraordinary and compelling reasons relating to his medical conditions presented at that time (COPD, high blood pressure, high cholesterol, an enlarged heart, obesity, and arthritis). However, the court ultimately denied the defendant's motion based on its investigation of the record and an individualized assessment of the § 3553(a) factors.

After review of the pleadings on the defendant's present motion, this court finds that the defendant's medical conditions continue to provide an extraordinary and compelling reason for consideration of compassionate release. However, as before, the court's inquiry

does not end here. Under Fourth Circuit guidance, this court is required to make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.[3]

The court will now review the § 3553(a) factors, including the procedural history of this case. Thereafter, the defendant's other non-medical claims and arguments will be addressed.

1.     *Nature and Circumstances of the Offense*. The defendant was one of 10 individuals named in a 5-count Superseding Indictment filed in the District of South Carolina on October 21, 2014. The defendant was named in the following Counts:  Count 1—Lesser included offense of conspiracy to possess with intent to distribute and to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851; and Count 2—Conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h).

The government filed an Information (ECF No. 425) pursuant to 18 U.S.C. § 851 notifying the defendant that he was subject to increased penalties based on two prior convictions. The defendant pleaded guilty to both Counts pursuant to a written Plea

---

[3] On April 7, 2026, the government filed a supplemental brief detailing March 10, 2026 letter from the BOP General Counsel's office wherein it declined to release the defendant for compassionate release (ECF No. 936-1). While the BOP agrees that the defendant meets the definition of a terminal illness under 18 U.S.C. § 3582(d)(1), it declined to release the defendant based upon its review of the defendant's 3553(a) factors and its perception that a release would minimize the severity of his offense and create a potential danger to the public.

Agreement (ECF No. 431).

The evidence developed in the investigation revealed that the defendant conspired with several individuals to acquire and distribute multi-gram and multi-ounce quantities of heroin throughout the Columbia, South Carolina area. Some of the controlled substances were imported from North Carolina and others were mailed here from various cities around the globe. The defendant was held personally accountable for 9.1 kilograms of heroin for guideline sentencing purposes.

The defendant also engaged in illegal activities with other co-conspirators by using the drug proceeds to purchase larger quantities of heroin, rent vehicles for the purpose of transporting heroin, and purchase airline tickets for travel to New York from Columbia to purchase heroin.

The defendant remained a fugitive after the Superseding Indictment was filed and another bench warrant was issued on October 21, 2014. He was arrested nearly three years later on June 27, 2017 after federal investigators utilized a digital imaging program to track him to a residence in San Antonio, Texas, where he was living with his wife, Nikki Glover, under an alias.

The Presentence Report (PSR) (ECF No. 480) was prepared by the U.S. Probation Office using the 2016 Guidelines Manual. As a result of the quantity of drugs involved in Count 1, the defendant's base offense level was 32 plus the following enhancements: 2 points for possession of a dangerous weapon, 2 points for maintaining a stash house, 4 points for

8

being an organizer or leader, and 2 points for obstructing justice, which resulted in an adjusted offense level of 42. The defendant was held personally accountable for 9.1 kilograms of heroin for guideline sentencing purposes.

For the money laundering offense in Count 2, the defendant's base offense level was 36. This level was enhanced by 2 points for the special offense characteristics set out in 18 U.S.C. § 1956, and by 4 points for the defendant's role in the offense, and by 2 additional points for obstruction of justice, which resulted in an adjusted offense level of 44. However, the Guidelines provide that when an offense level is in excess of 43, the offense level will be treated as 43.

At sentencing, this court afforded the defendant a benefit by giving him a 3-level reduction for acceptance of responsibility in spite of the fact that the defendant had obstructed justice. The guideline range was now at 360 months to life. The court then issued a 36-month downward variance from the low end of the Guidelines. Ultimately, this court sentenced the defendant to 324 months imprisonment and 8 years of supervised release.

The defendant filed a direct appeal of conviction and sentence. The Fourth Circuit Court of Appeals dismissed the appeal (ECF No. 499) based upon the appeal waiver contained in the plea agreement.

In March 2020, the defendant filed a motion pursuant to 28 U.S.C. § 2255 wherein he challenged his career offender designation and alleged claims of ineffective assistance of counsel. This court denied the motion on the merits (ECF No. 595) and the Fourth Circuit

denied the appeal of the denial (ECF No. 647).

The defendant has served approximately 75 months of his 324-month sentence and is currently scheduled to be released in June 2039.[4]  He is housed at Rochester Federal Medical Center.

2.  *History and Characteristics of the Defendant*.  The defendant is now 55 years old. He was born and raised in Brooklyn, New York and was one of 8 children.  The defendant has a stepson and daughter from previous relationships and has been married to his current wife, Nikki Glover, since 1994.

The defendant began smoking marijuana at age 15 and regularly smoked marijuana until his diagnosis of COPD in 2017.  He began abusing cocaine at the age of 18 and he used cocaine on a regular basis until approximately 2010 when he began using heroin.  The defendant states in his motion that he has been sober and in recovery since 2017.

The defendant completed the 10th grade of high school in Brooklyn, New York.  Prior to his arrest, the defendant ran a janitorial business and operated a clothing business with one of his co-defendants.

The defendant has a history of state convictions most of which are more than 30 years old, and all are at least 15 years old.[5]

---

[4] *See* https://www.bop.gov/inmateloc/, Michael Glover, Register No. 90715-830, last accessed April 10, 2026.

[5] Those prior convictions include: possession of marijuana up to ½ ounce (June 1992 arrest/August 1992 conviction in NC); resisting/obstructing public officer (September 1992 arrest/October 1992 conviction in NC); resisting/obstructing public officer/disorderly conduct/2nd degree trespass (October 1992 arrest/February 1993 conviction in NC); possession with intent to sell and deliver marijuana/possession with

*Post Sentencing Conduct*

While incarcerated for the past 8 and one-half years, the defendant has had only two disciplinary violations on his record: (1) failing to attend a stand count; and (2) misuse of medication, both level 300 violations.[6]

While at the BOP, the defendant has taken a total of 31 educational and vocational courses. In 2023, the defendant obtained his GED. He also completed the Non-Residential Drug Abuse Program (NRDAP) and the PROWD program. The defendant asserts that the BOP has given him a low risk pattern score and a minimum violent score.

In the BOP Individualized Needs Plan, dated December 9, 2025 (ECF No. 931-2 at 15), the Comments section notes: "Mr. Glover has demonstrated remarkable personal growth, responsibility, and commitment to positive change during his time of incarceration. Over the course of the last 18 months, he has consistently shown respect toward staff and fellow inmates, adhered to institutional rules, and taken meaningful steps toward self-improvement. He has remained incident report free, and most notably, he has completed Money Smart,

---

intent to sell and deliver cocaine/sell or deliver cocaine (July 1993 arrest/December 1993 conviction in NC); 2nd degree trespass/resisting/obstructing public officer (November 1993 arrest/April 1994 conviction in NC); possession with intent to sell and deliver cocaine, sell or deliver cocaine/conspiracy to sell and deliver cocaine (February 1994 arrest/August 1994 conviction in NC); fraudulent check more than $500, but less than $1,000 (August 2006 arrest/September 2006 conviction in SC); public disorderly conduct (October 2007 arrest/November 2007 conviction in SC); fraudulent check under $500 (3 counts)(August 2008 arrest/July 2009 conviction in SC); and possession of other controlled substances in Schedule I to V 1st offense (September 2010 arrest/August 2011 conviction in SC).

[6] Level 300 are the least serious infractions, with level 100 offenses being the most serious. As to the misuse of medication infraction, the defendant contends that when he was prescribed medication, he would place any leftover pills in the newer prescription bottles to eliminate multiple bottles of the same prescription.

Brain Health, The National Parenting Program, and Partners in Parenting. His actions reflect a genuine desire to prepare for a productive and law abiding life upon release."

The defendant states that he maintained a five-year work history at the BOP serving as a unit orderly from 2018 to 2023 until he was placed on medical work exemption. He states that he has successfully completed all programing requests and requirements.

The defendant also suggests that if the court granted him compassionate release and sentenced him to time served, he would accept home confinement as a condition of his supervised release. Finally, he asks this court to spend the remainder of his life with his wife and family to leave a legacy of goodwill, honor, and positivity.

*Release Plan*

The defendant states that if released, he would reside with his wife in Greensboro, North Carolina, which the probation officer has approved. He states that he has a strong support network and has been pre-approved for social security disability benefits.

In its response in opposition, the government notes the defendant's assertion that both his wife and mother-in-law will assist him with his dire medical conditions. However, the government contends that this is at odds with the statements of the defendant's wife and mother-in-law in their letters to the court wherein they state that the defendant is needed at home to assist both of them with their own significant medical concerns.

In her letter to the court dated July 17, 2025 (ECF No. 907-1), the defendant's wife, Nikki Glover, indicates that she has been suffering from breast cancer, she is an amputee

from diabetes, and has become a disabled person.  She states that she needs her husband to come home soon to help support her with her illness.

In a letter dated July 17, 2025 (ECF No. 907-1), the defendant's mother-in-law, Beatrice Love, writes that the defendant's wife, Nikki Glover, is very, very sick with breast cancer and has an amputated foot on her left leg.  Ms. Love states that Nikki Glover needs dire support at home and recently has been admitted to the hospital every two weeks of the month due to excess fluid in her body.  This causes her to have difficulty breathing and not being capable of movement in her body.  Ms. Love also states that she is in her mid-70s and is having difficulty with her health issues as well.

In a letter dated January 13, 2026 (ECF No. 927), Ms. Love confirms that she will take full responsibility to support and provide any needs for the defendant during his livelihood at her residence in Greensboro, North Carolina.

And, in a letter dated January 29, 2026 (ECF No. 930), the defendant's wife, Nikki Glover, notes that they have been together for 36 years.  She states that the defendant has worked very had in the past 8 years and that he is a good, loving man and that she is proud of his growth and strength.  She also notes that she did not anticipate the medical issues either of them have experienced, and that they are preparing their home so they can all take care of each other once the defendant is home.  She also mentions that she has recently started dialysis for kidney disease.

3. *Seriousness of the Crimes.* As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense.* The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct.* The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. However, in light of the BOP Medical Director's negative prognosis regarding his medical conditions and life expectancy, it appears to this court that the defendant's advanced age (55) and poor health would be a deterrence to future criminal conduct and that he would not be a substantial danger to the public. In addition, the BOP has given the defendant a low risk pattern score and a minimum violent score.

7. *Need to Avoid Unwarranted Disparity.* Compared with the culpability of similarly situated defendants, the defendant's imposed sentence was and is in line with statutory and guideline factors.

## II.  Additional Claims Raised by the Defendant

The defendant again raises what he considers a disparity in his sentence and that of one of his co-defendants, Eric Shawn Bradley.  This court granted Bradley's motion for compassionate release on April 24, 2023 (ECF No. 853).

Here, the defendant compares his medical situation to that of Bradley who has Stage 4 kidney failure.  The defendant also suggests that he and Bradley were both considered organizers or leaders of a criminal activity, but that Bradley engaged in more serious criminal conduct than him.

The government states that like his partner and co-defendant Bradley, the defendant was held accountable for a significant amount of heroin—over 3 kilograms, but less than 10 kilograms. Thus, Bradley's guidelines range was also significant as he also received role, firearm, and stash house enhancements. However, unlike the defendant, Bradley was immediately arrested in 2014, cooperated, and plead guilty.  As a result, Bradley was able to avail himself of a downward departure motion at sentencing under U.S.S.G. § 5K1.1, and later of a Rule 35(b) motion based upon substantial assistance.  The defendant, due to his fugitive status for years, was not able to avail himself of a substantial assistance motion. Thus, his actions are what resulted in his sentence remaining higher than Bradley's ultimate sentence.

As for the defendant's argument that he is no longer a career offender, this court agrees with the government that such classification has no bearing upon defendant's

Guideline range and if he were sentenced today, there would be no change. As the court pointed out in its order denying the defendant's § 2255 motion (ECF No. 595), the defendant's sentence was not driven by his career offender status. Rather, it was driven by his Guideline range, which depended in large part upon the quantity of heroin that he was held accountable for, coupled with several enhancements to his offense level.

CONCLUSION

As noted earlier in this order, this court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release relating to his medical conditions. And, this court has carefully reviewed the entire record and made an individualized assessment of the defendant's 3553(a) factors along with his post-sentencing conduct.

Undoubtedly, the defendant's crimes were very serious and this court has been more than generous in its exercise of leniency with regard to the defendant's current 27-year sentence of which the defendant has served only 8 and one-half years. However, the defendant appears to have shown that he has made very good progress with his rehabilitation while at the BOP and is capable being a law-abiding citizen. Congress passed the First Step Act for rare situations such as the defendant has presented here. Additionally, this court is cognizant of the defendant's severe and limited life expectancy due to his terminal medical conditions.

For the foregoing reasons, the motion (ECF No. 907) is granted and the defendant's sentence is reduced to time-served.

The defendant shall be released from BOP custody as soon as his release plan is implemented by the BOP, and proper medical care is secured by the defendant. All other conditions of the defendant's sentence remain in full effect including his 8 year term of supervision.

IT IS SO ORDERED.

April 16, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge